## MEVEY'S APPEAL.

The act of 1705 does not require that the terre-tenants or purchasers under the mortgagor, should be made parties to the *scire facias* on the mortgage; but the better and general practice is, to make them parties.

If a terre-tenant have no notice of the *scire facias* and proceedings under it, he will be permitted to make any available defence against the purchaser of the land at sheriff's sale, that he might have set up at the trial of the *scire facias*, in case it had been served on him.

Where a terre-tenant has not been noticed in the proceedings, the practice has been to permit him to make himself a party *pro interesse suo*, and to have the benefit of any equitable or legal defence to which he may be entitled; and for this purpose, the court will stay execution, and order an issue to try the question.

The act of 2d of April, 1822, was intended for the benefit of the terre-tenants or purchasers from mortgagors, and was not *intended* to interfere with the relative equities of the different purchasers.

On a *levari facias*, the sheriff is not bound to sell in a *lump* all the land contained in the mortgage. He may and ought to sell in *parcels*, as the property is occupied and enjoyed; and the court may, and will so direct the sheriff to sell, and in such order as will produce the most money, and at the same time protect the rights and equities of the terre-tenants.

A., having mortgaged *twenty-seven* acres of land to B., afterwards mortgaged *ten* acres thereof to C., which was sold under C.'s mortgage and released by B.; A. then sold *three* acres of the remaining *seventeen acres* to D., with general warranty. *Held*, that B.'s assignee could not sell the *three* acres under the mortgage of A. to B. until he had sold the *fourteen* acres not released, and then only for the deficiency.

*Sept.* 23. THIS was an appeal by Benjamin A. Mevey, from the decree of the District Court of Alleghany county, made on a rule to show cause, why a writ of *levari facias*, issued at the suit of Hugh Davis, for the use of Charles Rowan, now for the use of Benjamin A. Mevey, the appellant, against Thomas Miller, on a judgment confessed under a *scire facias* on a mortgage, should not be set aside, so far as the same affected *three acres of land*, a portion of the mortgaged premises claimed by C. S. Bradford. The court made the rule absolute, and ordered as follows: "That the execution be stayed, as to the *three acres* of the mortgaged premises, and that C. S. Bradford, the terre-tenant of said *three acres*, be made a co-defendant and permitted to defend *pro interesse suo:* the judgment being opened so far as it affected said parcel of the mortgaged pre-

mises, and no further, and the plaintiff having leave to proceed and sell the remaining parts of the mortgaged premises not previously released from the lien of the said mortgage; this issue not to be made up, unless the sale of the *fourteen acres* is insufficient to satisfy the mortgage."(a)

The facts of this case are fully stated in the following opinion of the court below, (GRIER, President;) which was affirmed by this court.

"The mortgage in this case includes some twenty-seven acres of ground in Ross township, near to Alleghany city. Davis sold the land to Miller, in April, 1835, and took back this mortgage to secure $3585 of the purchase money.

"On the 3d of January, 1838, Thomas Miller mortgaged ten acres of this land to Charles Rowan, to secure the sum of $3000.

"On the 25th of October, 1838, he sold three acres (not encumbered by his mortgage to Rowan) to Solomon Schoyer, with *general warranty* for the sum of $3500. Charles S. Bradford, Esq., is the assignee of Schoyer's title.

"On the 1st of January, 1839, Miller conveyed to Thomas H. Patterson, for the consideration of $15,000, *twenty-four* acres of the land included in this mortgage, ten acres of which were also included in his mortgage to Rowan.

"On the 30th of April, 1839, Patterson conveyed the twenty-four acres to R. N. Havens. By this deed it appears, that Patterson had purchased, specially subject to the payment of the bond to Davis for $3000, which then remained unpaid; for his deed to Havens recites, that the sale is made 'subject to the principal of a certain mortgage and interest thereon, from the date of the said deed from Thomas Miller to Hugh Davis, dated April 20th, 1835, and which mortgage is recorded in mortgage book,' &c. On the 29th of January, 1842, T. J. Bigham, Esq., became the purchaser at sheriff's sale, of Haven's interest in the twenty-four acres, subject to the two mortgages.

"On the 26th February, 1842, Dr. Wray became the purchaser of the ten acres mortgaged to Rowan, by a sale under Rowan's mortgage.

"Charles Rowan purchased Davis's mortgage, but the date does not appear, and instituted the present proceeding by *sci. fa.* to November Term, 1844. On the 24th of October, about the time the *sci. fa.* issued, or soon after, Rowan gave a release of the mortgage to Dr. Wray, for the ten acres purchased by him.

"The act of 1705, entitled 'An act for taking lands in execution for the payment of debts,' which establishes the mode of proceeding to foreclose a mortgage and sell the property mortgaged, does not

(a) See note at end of this case.

require that the terre-tenants, or purchasers under the mortgagor, should be made parties to the proceedings.

" The only difference that a want of notice to the terre-tenant makes, is, that he will be permitted to make any available defence against the purchaser of the land at sheriff's sale, that he might have set up at the trial of the *scire facias*, in case it had been served upon him. See Mather *v.* Clark, 1 Watts, 491; Culp *v.* Fisher, 1 Watts, 494; Cowan *v.* Getty, 5 Watts, 531.

" But a terre-tenant may have many equities, of which he could not avail himself after a sale on the mortgage, and of which, if not permitted to avail himself in some stage of the proceeding, it would be manifest injustice. Thus, suppose two lots, subject to a mortgage, are sold by the mortgagor, one to A. for a full consideration, the other to B. subject to the whole mortgage, and amply sufficient to pay it. Now if B. were to pay the mortgage, and, by taking an assignment of it, attempt to use the rights of the mortgagee, so as to sell A.'s lot either alone or along with his own, or to compel A. to pay one-half of the mortgage, in order to relieve his property, this would be manifest injustice; and yet, if the lot of B. were sold to a stranger, it is doubtful whether he would have any remedy, or how it would be administered to him, especially if the mortgagor were insolvent.

" Hence it is generally the practice to make the terre-tenants parties to the *sci. fa.*, and for the mortgagee to direct the sheriff to give them notice. And where a terre-tenant has not been noticed in the proceedings, the practice has been, to permit him to make himself a party, *pro interesse suo*, and to have the benefit of any equitable or legal defence, to which he may be entitled.

" The act of 2d April, 1822, is evidently intended for the benefit of terre-tenants, who have purchased from the mortgagor. It would be of no use to the mortgagor himself. Nor was that act intended, as plaintiff's counsel has contended, to interfere with the relative equities of such purchasers, or terre-tenants, and to establish a horizontal rule to govern all cases of contribution to the payment of a mortgage; such a construction of it would render it a most mischievous and unjust enactment. It is intended for the benefit of persons who have purchased parts of the mortgaged property, and are willing to contribute their proper share to have their land released; that they may not be made liable for the laches, neglect, or inability of others, nor be imposed on by the mortgagee, who might release the terre-tenant, in equity bound to pay the whole, and compel another to pay, who ought not to pay any thing, or at most was bound to contribute only his proper proportion.

"A mortgagee ought not to be suffered to affect the rights of the terre-tenants, by refusing or neglecting to make them parties. It is an entirely mistaken notion of the counsel that has been urged so vehemently, that the sheriff must *sell in the lump* every thing contained in the mortgage; and that his deed will be of no avail, unless it follows precisely the courses and distances laid down in the deeds and writs of *scire facias* and *levari facias*. That a whole square in a city must be sold together, though divided into twenty different tenements, with entire different equities; and that the court have no power to interfere, either to direct the sheriff to sell in lots or separate tenements, and in what order to sell them. If such be the case, our courts of justice are without competent authority to administer justice, and may be compelled, by the stringency of a statute, to sit by as the silent spectators, or rather as the coadjutors of the most gross iniquity: and in a course of near thirty years' experience in our courts of justice, I can say that such has not been the practice, so far as it has come to my knowledge. In fact this doctrine has its foundation in the same mistaken notion that was advanced by counsel in the case of Culp *v*. Fisher, 1 Watts, 494, viz.: that a mortgage was like a ground-rent, and that the same doctrine applied to both. In that case, Mr. Justice Kennedy says, 'Defendant's counsel have likened the release of part of the land mortgaged, to the case of rent charged on three acres of land, where he who has the rent released all his right in one acre. And it is said the release extinguishes the whole rent; and the reason assigned for it is, because it issues out of every part of the land, and cannot be apportioned. But this cannot be said of money, or a debt charged on land by a mortgage. For although the whole of the money is charged on every part and parcel of the land embraced by the mortgage, *yet if the land so mortgaged consists of several tracts or parcels*, when the mortgage money comes to be raised by a judicial sale of it, *each tract or parcel must be sold separately;* and no more of it can be sold than shall be found sufficient to raise the money claimed upon the execution.

"Believing, then, that we have the power, not only to permit a terre-tenant of part of the mortgaged premises, to intervene and have a hearing *pro interesse suo*, and to make him a party, and give him a hearing, but also to control the sale for the purpose of doing justice between the several terre-tenants, and hindering one of them, who may have purchased the control of the judgment, from committing a wrong or a fraud upon the others; let us examine the relative positions of the parties litigant in this case, and their equities.

"No. 1 is the three acres first sold by the mortgagor with warranty, now held by Mr. Bradford.

"No. 2 is the ten acres purchased under a mortgage given by the mortgagor, but released by the holder of the mortgage since this suit was brought.

"No. 3 is fourteen acres more, owned by B. Mevey, the present assignee of the mortgage. I say *now owned* by Mevey, because it is so asserted in Mr. Bradford's deposition, and not denied by any answer of Mevey, and assumed as a fact on the argument. But in the decision of the present question, so far as the judgment of the court shall extend, it is not material whether Mevey be the *owner* of the fourteen acres or not.

"The *scire facias* in this case was not served on the terre-tenants, nor any notice given to them. But on the return of service upon the mortgagor, a judgment was entered for the plaintiff on default of an affidavit of defence, on the 28th of November, 1844. On the 29th of November, Mr. Dunlap moved to have the judgment opened; on whose behalf the record does not state. The judgment is opened by consent, and a plea of payment entered. And this would appear by the following entry on the record, to have been done in behalf of *some person* claiming as assignee of the mortgaged premises. But that person was not Mr. Bradford. Afterwards, on the 21st of October, 1845, an agreement is filed of record, reciting that part of the mortgaged premises had been released, and the assignee having pleaded, that more is demanded than a just proportion from the remainder; therefore it was agreed, that certain persons should be appointed to value the released and unreleased parcels. These referees made report. And, afterwards, December 1st, 1845, by consent of defendant's counsel, judgment is entered for $1600, and *the report of referees withdrawn by consent;* and on the 4th of December, the debt and interest, assigned to Benjamin E. Mevey without recourse, by plaintiff's counsel.

"It is not necessary to assert positively, what appears probable from the face of the proceedings, that these purchases of the mortgage have been made with a view to control it, for the purpose of compelling the *three acres* to contribute to the payment of this mortgage, right or wrong, and shifting it from the other parcels.

"The question is, whether the *three acres*, first sold, are bound to contribute to the payment of this mortgage, if the remaining *twenty-four*, or the remaining *fourteen*, are sufficient for that purpose.

"Where land is charged with a burden, each part ought to bear no more than its due proportion of the charge; and equity will com-

pel each part to a just contribution; and a creditor cannot by any assignment, or act of *his*, deprive the co-debtors, or owners of the land, of their right of contribution against each other. See Stevens *v.* Cooper, 1 Johns. Ch. Ca. 425; Parkman *v.* Welsh, 19 Pick. 231.

"If the purchasers of the several parcels in this case had purchased the mere equity of redemption, under a sheriff's sale on judgments subsequent to the mortgage; each purchaser, without regard to the date or order of his purchase, would be justly compelled to contribute to the payment of it, in proportion to his interest. And if the mortgagee, having a knowledge of their several rights, should *release one portion*, and attempt to compel the owner of the other to pay the whole; equity would interfere and compel him to release the mortgage on any parcel, on payment of its proper proportion. And this is the case provided for, by our act of 2d of April, 1822. In Sir William Herbert's case, 3 Coke, it was resolved that if A. be seised of three acres, and acknowledge a recognisance or statute, and enfeoff B. of one acre, and C. of another, and the third acre descends to his heir, and if execution be sued out against his heir, he shall not have contribution against the purchasers; 'for the heir sits in the seat of his ancestor.' And the same principle applies, says Chancellor Kent, if there be several purchasers in succession, at different times; the last cannot call on the previous one to contribute, for 'he sits in the seat of his grantor,' and must take the land with all its equitable burdens. It cannot be in the power of the debtor, by the act of assigning or selling his remaining land, to throw the burden of the judgment, or a rateable part of it, back on the first purchaser.

"The case is not analogous to a rent-charge, which grows out of the land itself; and when every purchaser of distinct parcels of a tract of land, charged with the rent, takes it with such a proportional part of the charge: see Clowes *v.* Dickenson, 5 Johns. Ch. Ca. 242; Nailer *v.* Stanley, 10 Serg. & Rawle, 450. And the doctrine applies equally to lands subject to the lien of a mortgage, as to those subject to the lien of a judgment.

"The case of Gill and Lyon, 1 Johns. Ch. Ca. 447, is precisely like the present. Lyon purchased by deed with warranty, from the mortgagor. Gill purchased another part, under a sheriff's sale, on a subsequent judgment against the mortgagor. The chancellor compelled the mortgagee to sell Gill's part *first*, and allowed Lyon to redeem, by paying the balance not made by the sale. See also the case of Allen *v.* Clark, 17 Pickering, 55. In this case the sale

H

of the first parcel (three acres) to Schoyer was for full value, as appears by the warranty. And the sale of the second (twenty-four acres) to Patterson was a sale *specially subject* to the payment of $3000 of the mortgage, as appears by the Patterson deed to Havens; so that it is plain, that the owner of the second parcel would have no right to call on the owner of the first parcel to contribute, in case he had paid off the mortgage. And if the mortgagee was attempting to sell No. 1, a chancellor would compel him to sell the *second parcel first,* and if the mortgage was not satisfied by such sale, he would then be permitted to sell the *first parcel,* unless the owner would pay the balance of the mortgage.

" *Ten acres* of the *twenty-four* having been released, and the terre-tenant of the other *fourteen* having appeared and confessed judgment, there is no difficulty in the case, unless it should turn out that the sale of the *fourteen* acres should not be sufficient to pay the mortgage. Whether the present owner of the mortgage can enforce any portion from this *three acres,* after the release of the *ten,* is a question of some difficulty; and one which it would be necessary to form an issue to try, and which Mr. Bradford would have a right to have tried, before his lot should be offered for sale; as he has not yet had a day in court. If the parties desire it, such an issue will be ordered; either by opening the judgment *pro tanto,* and making Mr. Bradford a party, with leave to plead *pro interesse suo,* or by a special issue formed between Mevey and Bradford." The court, thereupon, made the order set forth in the commencement of this report.

From this decree, Benjamin A. Mevey appealed; and assigned, in this court, the following error:

The court erred in staying the execution in this case as to the three acres of the mortgaged premises described in the deed of Miller to Schoyer, and permitting C. S. Bradford, Esq., to be made a co-defendant, and in opening the judgment so far as it affects the said parcel of the mortgaged premises.

*Hampton* and *Shaler,* for appellant.—The whole twenty-seven acres were mortgaged; there were no divisions. The mortgagee is not bound to notice subsequent divisions by the mortgagor. Under the act of 2d April, 1822, 7 Smith, 551, a mortgagor can release a portion of the mortgaged premises. This act is directory as to the proceedings; he is obliged to levy on all not released. It is a proceeding *in rem,* the mortgage being the basis. The *sci. fa.* must pursue the mortgage, except as to released portions. The court

cannot compel him to do what the law will not permit; that is, to levy on a portion of the premises, without the residue being released. If the court here must compel the plaintiff to release the three acres, before permitting him to proceed and sell the fourteen acres, it would not only be against law but justice.

Nor would the difficulty be obviated by levying on the whole, but selling only the fourteen acres. This could not be done. The sale must be co-extensive with the levy. A mortgagee cannot know, nor is he bound to know, the metes, bounds, and dates of the respective divisions or portions. The principle on which the decisions in Nailer's Executors v. Stanley, 10 Serg. & Rawle, 455, 456, rests, is entirely different from the present. The reason of the rule there is obvious and just. The debt is a personal one. The debtor always remains liable to pay the debt. All his property must be first taken and exhausted. Hence the last purchaser takes with that understanding. But in the case of a mortgage there is no personal debt. The judgment not against the person, but de terris. The land, not the person, pays the debt. As to the equities in this case : the complainant is not an innocent purchaser without notice. He knew of the mortgage. Now he asks the intervention of the equitable powers of this court, to enable him to evade the payment of any portion of the mortgage; whilst all that we ask, standing in the double capacity of purchaser and mortgagor, is, that he be compelled to pay his proportionate part of the mortgage, and we will pay ours.

*Biddle*, contrà, contended, that where a mortgagor sold parts of the mortgaged property, the mortgagee was bound to proceed against, and sell the residue of the premises in the first instance, and if this were not sufficient to pay the debt, then to sell the portion last sold by the mortgagor, and so on, in the inverse order of the dates of the purchases. He cited, Nailer's Executors v. Stanley, 10 Serg. & Rawle, 455, 456 ; Gill v. Lyon, 1 Johns. Ch. Rep. 449 ; Clowes v. Dickenson, 5 Johns. Ch. Rep. 242 ; James v. Hubbard, 1 Paige's Ch. Rep. 228 ; Gouverneur v. Lynch, 2 Paige's Ch. Rep. 300 ; Guion v. Knapp, 6 Paige's Ch. Rep. 39 ; Skeel v. Spraker, 8 Paige's Ch. Rep. 195 ; Schryver v. Teller, 9 Paige's Ch. Rep. 173 ; Western Reserve Bank v. Commercial Bank, 11 Ohio Rep. 444 ; 3 Leigh's Rep. 539 ; Cowden's Estate, 1 Barr, 274.

The act of Assembly has nothing to do with this case, and no bearing upon it. It is a case of equitable interference. It has been contended that every portion of the land must bear its proportionate part of the debt. There is nothing of this kind in the act. If this

were the rule, the daily business transactions between men, in the sale and purchase of real estate, would be stopped. But such is not the rule. Ingersoll *v.* Sergeant, 1 Whart. 359; Culp *v.* Fisher, 1 Watts, 494; Taylor's Executors *v.* Maris, 5 Rawle, 57.

This is an effort to displace the equities of the parties.

*Sept.* 26. Rogers, J.—Judgment affirmed for the reasons given by Judge Grier.(*a*)

---

(*a*) A similar order was made in the District Court of Philadelphia in Winberg *v.* Reiff, December Term, 1844, No. 58, which was a *sci. fa.* on a mortgage and execution issued, under which lots Nos. 1 and 2 were sold by the sheriff. Swartley filed an affidavit stating that the mortgage in suit was the first incumbrance given by Reiff, who was the owner of both lots. That he subsequently, while owner of Nos. 1 and 2, sold No. 1 to Springer, and agreed with the purchaser that No. 2 should pay the mortgage to plaintiff. Springer mortgaged No. 1 to Reiff for the purchase money, which mortgage was held by Swartley. Upon this, the court set aside the sale, and ordered "plaintiff to proceed to sell house and lot described in sheriff's advertisement as No. 2, before selling No. 1, which is to be sold only in case of No. 2 not making debt, interest, and costs." Ex. Doc., Dec. T., 1844, No. 267.