## Zablocki v. Irwin

*Joseph E. Altomare*, for plaintiffs.
*Bernard J. Hessley*, for defendants.

WOLFE, *P.J.*, April 9, 1979—On October 24, 1978 we dismissed plaintiffs' action in equity seeking mortgage foreclosure and allocation of mortgage debt between parcels of land subject to the lien of mortgage for the reason plaintiffs had an adequate remedy at law. [See Editor's Appendix, post.] Subsequent to that decree plaintiffs have now filed their action in law for mortgage foreclosure pursuant to Pa.R.C.P. 1141 et seq. which requires the proceedings to conform to the rules of assumpsit.

Factually, defendants as mortgagors encumbered their respective premises of 38 acres and 3.73 acres to the Brookville Bank and Trust Company for a mortgage loan allegedly to raise the purchase price of $6,500 for the 3.73 acres. After the consummation of the sale and mortgage which occurred on or about April, 1970 defendants permitted the smaller parcel to go to treasury tax sale for default of payment at which sale plaintiffs purchased the parcel on August 5, 1974. The premises were not redeemed and thereafter on January 23, 1978 plaintiffs paid the full amount of the mortgage indebtedness in the amount of $5,450.89 and took a mortgage assignment. On November 17, 1977

plaintiffs conveyed the parcel to third parties for the sum of $12,500.

Plaintiffs now seek the full amount of the mortgage balance from the larger parcel.

Defendants have answered the complaint and filed new matter alleging that Glenn C. Irwin and his wife agreed to the mortgage lien on their larger parcel to be additional collateral or security for the loan to their son, Russell L. Irwin, and was intended to secure the portion of the face amount of the mortgage in excess of 80 percent of the appraised value of the smaller parcel and was to be released from the lien at such time the mortgage balance was paid down to the point that the paid amount was equal to 20 percent of the appraised value of the smaller parcel. They also plead that by reason of plaintiffs' acquisition of the mortgage a merger was perfected thereby extinguishing the debt. They further argue that the purchase price for the smaller parcel exceeded the mortgage indebtedness and therefore the mortgage is satisfied and finally, the equitable doctrine of marshalling of assets requires plaintiffs to seek satisfaction of the indebtedness from the smaller parcel.

These affirmative defenses have been met by plaintiffs with preliminary objections, to wit, a demurrer and a motion to strike impertinent matters therein.

In considering a demurrer we are compelled to accept as true all well pleaded facts and the fair inferences therefrom, *but not conclusions of law or unjustified inferences*. The question to be decided upon the facts averred in the complaint is whether it shows with certainty the law will not permit a recovery. Where a doubt exists as to whether or not summary judgment should be entered, it should be

resolved in refusing to enter it: Borden v. Baldwin, 444 Pa. 577, 281 A. 2d 892 (1971); Gardner v. Allegheny County, 382 Pa. 88, 114 A. 2d 491 (1955).

Another guideline we are compelled to follow in considering a demurrer is the holding of Schacter v. Albert, 212 Pa. Superior Ct. 58, 62, 239 A. 2d 841 (1968), stating:

"It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what intention of the parties was as shown by the facts. . . Under such circumstances, the case is not one to be decided by the Trial Judge on a motion for summary judgment. S. J. Groves & Sons Company v. Ohio Turnpike Commission, 315 F. 2d 235. . . . (1963)."

Therefore, the question to be decided is not whether the allegations in the complaint are so clear in both form and specification as to entitle plaintiffs to proceed to trial without amending it, but rather if the facts as averred show unequivocally the law will not permit a recovery.

Plaintiffs argue defendants' new matter are conclusions of law and matters dehors the record. For the most part we agree with this observation.

We have reviewed the mortgage and there is no limitation of the mortgagee's authority to foreclose. In short, both premises were subjected to the mortgage lien and there is no inference that the larger parcel was to play the role of secondary recovery in the event the smaller parcel, upon default, was insufficient to pay the obligation. We do not question this may have been an oral understanding or agreement as between the mortgagors and the mortgagees at the time of execution of the mort-

gage but clearly this does not work to the detriment of a bona fide good faith purchaser for value. We cannot rewrite the mortgage.

Nor do we believe there is merit to the merger defense for the reason merger of a liened debt occurs only when the mortgagee becomes the owner of the collateral. This occurred as to the smaller parcel but not as to the larger one. There are, of course, other principles of merger which are not applicable here in that neither the bank nor plaintiffs' assignee have released the larger parcel from the mortgage lien and therefore the sale of the smaller parcel, albeit for an amount exceeding the mortgage indebtedness, does not deteriorate the lien on the larger parcel. We therefore hold defendants' averment as to primary and secondary security and the doctrine of merger as well as the allegation of satisfaction of the entire mortgage are incorrect conclusions of law.

Notwithstanding, we do not agree with plaintiffs that the new matter is impertinent and therefore should be stricken. As to the facts pleaded, there is no dispute and this therefore leaves only an issue of law to be decided. In this regard we believe plaintiffs' view of the applicable law on these stated facts is too narrow in its application. Plaintiffs argue, notwithstanding the sale of the smaller parcel, the lien of the mortgage on the larger parcel is not affected and they have a right to make foreclosure for the full amount of the mortgage balance. We do not agree.

We have found no Pennsylvania cases where the precise question has been decided and none have been cited for us. The general rule in such instance where two parcels of land are covered by a mortgage owned by different persons and subsequently

one of the parcels is released by the mortgagee, the mortgagee must abate part of the mortgage debt as is necessary to protect the owner of the other parcel: 55 Am.Jur. 2d, Mortgages §472:

"The holder of a mortgage covering two parcels of land owned by different persons cannot, by a partial release of the mortgage in favor of the owner of one parcel, cast the entire burden of the mortgage upon the owner of the other parcel; and if such release is given, the holder of the mortgage must abate such proportionate part of the mortgage as is necessary to protect the owner of the other parcel. [McRae v. Pope, 311 Mass. 500, 42 N.E. 2d 261, 143 A.L.R. 540 (1942)]."

In the cited case of McRae v. Pope, supra, the court stated at 311 Mass. 506:

"As the case stands against Mrs. Pope, she was the assignee of a mortgage that covered not only the land owned by the Plaintiffs, but also the parcel that had been conveyed by them to her son as she well knew. As between the Plaintiffs and her, the former were liable to her on the mortgage note, the security of which comprised both parcels of land. The burden of the mortgage rested upon all of the land, and Mrs. Pope attempted, by her partial release to her son, to cast the entire burden upon the Plaintiffs, and, by so doing, to deprive them of the benefit of a portion of the security. This she cannot do in disregard of the [equity] of the case which requires that she must abate such proportionate part of the mortgage debt as is necessary to protect the Plaintiffs." (Citations omitted.)

Our courts have held as cases are cited in 25 P.L.E., Mortgages §190:

"Presumptively, a release of mortgage extinguishes the debt which the mortgage was given to secure. Similarly, although a bond and a mortgage taken for the same debt are for distinct securities, possessing dissimilar attributes subject to different remedies, payment of either discharges both, and a release of either, without actual payment, is a discharge of the other, unless otherwise intended by the parties. However, a release of land from the lien of a mortgage is not conclusive evidence of the extinguishment of the debt but, rather, the matter is largely one of intention and it is possible to discharge the lien of the mortgage and put an end to its effect as a security without releasing the mortgagor's personal liability for the debt." (Citations omitted.)

In the instant case, as the mortgage dictates, both parcels were tendered and accepted as security for the mortgage loan. We may not speculate or assume as to any agreement, inter se, between the parties at that time or the disposition of those funds. Third party rights are now involved and must be recognized. So too, the third party must exercise those rights fairly and in accordance with the terms of the mortgage and foreclosure procedure. The law will not permit one parcel to bear the full burden of the indebtedness to the benefit of the other. Plaintiffs could have foreclosed on both parcels but are permitted to realize but one payment. The cases cited by plaintiffs holding the doctrine of reverse order of alienation on mortgage foreclosure are those cases where the mortgagor, rather than the mortgagee, has sold the mortgaged property without obtaining a release of the mortgage from the mortgagee and upon foreclosure the mortgagee is relegated first to foreclose on any property re-

maining titled to the mortgagor and if the whole were sold at successive periods, "the mortgagee must in the first instance, come upon the part last sold before attacking the other." Meveys' Appeal, 4 Pa. 80 (1846); Cowden's Estate, 1 Pa. 267 (1845). Indeed, Home Unity Savings and Loan Association v. Balmos, 192 Pa. Superior Ct. 542, 162 A. 2d 244 (1960), holds essentially where two parcels are subject to a mortgage, become owned by different persons neither has preference over the other and the properties are liable to the payment of the mortgage debt in proportion to their respective values at the time of the sheriff's sale which created the multiple ownership of the premises and thus the Act of April 2, 1822, P.L. 134, 21 P.S. §761, is not applicable which permits a mortgagee to release part of the mortgage premises and proceed to recover the balance entirely against the remainder. Quite obviously this would be the case where the ownership of the parcels remain in the mortgagor. Further, the doctrine of reverse order of alienation is not applicable when the mortgagee, after acquisition of one of the parcels alienates ownership by sale to a third party. If this were the case it would set the stage for frauds to the detriment of the remaining mortgagors.

In Greater Adelphia Building and Loan Association v. Trilling, 323 Pa. 361, 367, 185 Atl. 716 (1936), we find this observation:

"As respects the collateral securing the mortgage debt, the mortgagor and his grantee occupy, respectively, the positions of surety and principal. The mortgagor is entitled at all times to have the security applied on the debt. As respects the real security, the land, the mortgagee may not release it or any portion of it from the lien of the mortgage, or

otherwise deal with it as between itself and the mortgagor's grantee so as to destroy or impair its value as security for the debt, thus tending to enlarge the mortgagor's personal liability on his bond or original undertaking: Meigs v. Tunnicliffe, 214 Pa. 495, 63 A. 1019; Hunter's Assigned Est., 257 Pa. 32, 101 A. 79. The reason for this, as Judge Keller stated in Zusin v. Wharton Business Men's B. & L. Assn., 107 Pa. Superior Ct. 181, 188, 163 A. 377, is that the mortgagor, or one in succession to his rights (as are defendants in the case at bar), 'would have the right to pay the original debt or obligation to the [mortgagee] and require the assignment to her or him, respectively, of the securities held by the [mortgagee] for its payment.'"

For these reasons we will dismiss the preliminary objections with leave of defendants to file answer to the complaint in assumpsit for mortgage foreclosure and if defendants elect not to answer permit plaintiffs to enter judgment for the amount of the mortgage balance diminished by the proportionate value of the respective parcels at the time of the sale of the smaller parcel to the third party. We recognize this will undoubtedly require an appraisement of the properties unless the parties can agree and if so the costs will be equally divided.

For these reasons we enter the following

## ORDER

And now, April 9, 1979, the preliminary objections are dismissed subject to the holdings of the within opinion.

## EDITOR'S APPENDIX

The following is President Judge Wolfe's adjudi-

cation of October 24, 1978 (at No. 2 of 1978, Equity):

WOLFE, *P.J.*, October 24, 1978—For disposition are defendants' preliminary objections to dismiss the complaint in equity, strike the pleading for lack of conformity under the laws and rules of court and for more specific complaint.

## STATEMENT OF ISSUE

Do plaintiffs state a cause of action in equity?

## FINDINGS OF FACT

1. On April 13, 1970 defendants, together with their son and his wife, Russell L. Irwin and Judith C. Irwin, jointly executed a mortgage with accompanying bond to the Brookville Bank and Trust Company in the amount of $6,500.

2. The mortgage indenture created a lien on 38 acres of land owned by defendants and a lien on 3.73 acres of land owned by their son and daughter-in-law.

3. On August 5, 1974 the 3.73 acre parcel owned by defendants' son and daughter-in-law was sold to plaintiffs at treasurer's sale for non-payment of duly assessed real estate taxes.

4. On August 10, 1976 the treasurer conveyed the 3.73 acre parcel to plaintiffs after failure of the owners to redeem within the statutory period and the treasurer's deed was duly recorded.

5. On January 23, 1978 plaintiffs paid the entire mortgage indebtedness a balance of $5,450.89 to the mortgagee and took an assignment of the mortgage.

## QUESTIONS OF LAW AND CONCLUSIONS THEREON

Although we cannot determine as a matter of fact the mortgage was in default at the time plaintiffs honored the entire principal balance, plaintiffs plead that the mortgage was in default to a period of 60 days and foreclosure was imminent which thereby would place their acreage purchased at treasurer's sale in jeopardy. Plaintiffs request that we declare a judgment of mortgage foreclosure be entered in their favor against defendants and allocate 91 percent of the mortgage indebtedness to defendants' premises and enter the judgment therefor in the amount of $4,960.31 plus 10 percent attorney's commission, costs of suit and interest from January 23, 1978 which is the date alleged that the mortgage went to default and payment was made thereon by plaintiffs.

To this plea for relief in equity defendants argue plaintiffs have an adequate remedy at law. We agree. Indeed, we know of no rule or any law that simply permits a court under the stated findings of fact to accept any allocation determined by plaintiffs and enter a judgment thereon.

Plaintiffs argue they are entitled to contribution by reason of their paying in excess of their fair portion of the mortgage indebtedness and rely upon cited cases which hold the legal tenet that when a portion of premises charged with a lien is sold at a judicial sale the property sold is liable only for that proportion of the legally liened indebtedness as its value bears to the value of the entire mortgage premises. This situation generally occurs when the mortgagee releases its lien on the premises conveyed to a third party for a fair consideration. The

law will not permit the remaining portion to the detriment of a co-owner to be strapped with the entire indebtedness. This is a simple equitable result.

In the instant case we believe plaintiffs have lost sight of the fact there has been no judicial sale or release of the 3.73 acres. Rather, plaintiffs voluntarily purchased their parcel at a treasurer's sale and thereafter paid the mortgage balance to the mortgagee and took an assignment of the mortgage. Thus, in doing so plaintiffs are now in the position of the initial mortgagee with the same rights to foreclose the mortgage in default of payment; because plaintiffs' parcel is subject to the mortgage is not unfair nor inequitable in any respect to them as they had full knowledge of the mortgage lien upon both parcels when they purchased their parcel at the treasurer's sale.

Plaintiffs argue if they are relegated to a mortgage foreclosure they will lose their mortgage first lien position as they would be relegated to an assumpsit action and if successful a judgment would be a new lien and junior to the existing mortgage. We experience difficulty in following this argument because we see no reason why plaintiffs would be compelled to pursue an assumpsit action when they are in possession of the assigned mortgage. Perhaps plaintiffs do not want to bring foreclosure action against their parcel and if this is so plaintiffs could simply release their parcel from the mortgage, however, in such event defendants would be entitled to an apportionment of plaintiffs' property value against the mortgage indebtedness.

Plaintiffs rely upon a lower court case of Marsellus v. Diehl, 11 Cumberland 49 (1957). The facts of that case are not parallel to the instant case. In the

cited case the parties inherited separate parcels covered by a blanket mortgage. Plaintiff paid the entire mortgage balance and sold their parcel to a third party for a valuable consideration. The court simply held plaintiffs were entitled to restrain defendants from sale of their property and directed apportionment of the indebtedness to it. In the instant case although plaintiffs have paid the entire indebtedness they have not sold their parcel but rather simply ask us to make an apportionment of the mortgage indebtedness between plaintiffs and defendants' parcel and enter mortgage foreclosure.

In our opinion this is not an issue for equity as plaintiffs have a full and complete adequate remedy at law to protect or exercise their property rights.

For the foregoing reasons we enter the following

## DECREE NISI

And now, October 24, 1978, the preliminary objections to the complaint in equity are sustained.

Plaintiffs are granted ten days after notice of the filing of the within adjudication to take exceptions thereto pursuant to Pa.R.C.P. 1518 and in the absence thereof, upon praecipe, the prothonotary shall enter the within decree as final on the judgment index on the law side of the court.