# Assigned Estate of James Hunter et al.

*Mortgages—Bonds—Release of part of mortgaged premises—Discharge of mortgagor—Act of April 2, 1822, 7 Sm. L. 551.*

1. Where a mortgagor has parted with his title to the mortgaged premises, a release of part thereof by the mortgagee without the knowledge or consent of the mortgagor will discharge the latter from personal liability for any loss to the mortgagee resulting from a deficiency in the proceeds on a subsequent sale under foreclosure proceedings. By such release the mortgagee assumes the risk of the unreleased portion of the property being of sufficient value to secure his debt.

2. At the audit of the account of a substituted trustee of an assigned estate it appeared that the assignor previous to the assignment had mortgaged certain real estate giving the usual penal bond to further secure the mortgage debt; subsequent to the assignment certain portions of the mortgaged premises were released from the lien of the mortgage without the consent or knowledge of the mortgagor, and the mortgaged premises were afterwards sold for a sum insufficient to pay the mortgage and judgment was entered upon the bond. The holder of the judgment claimed a preference from the proceeds of the sale of certain other real estate for the balance due over other creditors. The lower court decided that by the release of said portion of the mortgaged premises, without the consent of the mortgagor, the mortgagor had been discharged of any liability on the bond and disallowed the claim. *Held,* no error.

3. The Act of April 2, 1822, 7 Sm. L. 551, relating to mortgages, is not applicable to this case.

Argued Jan. 22, 1917. Appeal, No. 266, Jan. T., 1916, by Henry K. Fox, Executor of the Estate of Elizabeth M. Lassalle, deceased, from decree of C. P. No. 4, Philadelphia Co., March T., 1887, No. 729, dismissing exceptions to report of auditor, in re Assigned Estate of James Hunter and John Hunter, Individually and as Copartners. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Exceptions to report of Charles H. Mathews, Esq., auditor. Before AUDENRIED, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. Henry K. Fox, executor of the estate of Elizabeth M. Lassalle, deceased, appealed.

*Errors assigned* were in dismissing the exceptions.

*F. B. Vogel,* with him *Henry K. Fox,* for appellant, cited: Taylor's Executors v. Maris, 5 Rawle 50; McIlvain v. Mutual Assurance Co., 93 Pa. 30; Schrack v. Shriner, 100 Pa. 451; Hart v. Anderson, 198 Pa. 558; Wilbur's Appeal, 10 W. N. C. 133; Horning's Executors' App., 90 Pa. 388; Turner v. Flennicken, 164 Pa. 469; Snyder v. Crawford, 98 Pa. 414.

*George Sterner,* with him *Charles R. Maguire,* for appellee, cited: Meigs v. Tunnicliffe, 214 Pa. 495.

OPINION BY MR. JUSTICE WALLING, March 5, 1917:

This is an appeal from a decree of distribution of an assigned estate. In 1887, John Hunter individually and the firm of James and John Hunter made a general assignment to John Field, for benefit of creditors. Prior thereto in 1878 James Hunter and John Hunter, being the owners of certain lands, comprising about 32 acres, and situate near Fifty-fifth street and Lancaster avenue, Philadelphia, executed a mortgage thereon and an accompanying bond to Wm. C. Houston, administrator, etc., to secure a loan of $27,000, payable in three years, with interest. Some days later John Hunter conveyed his interest in the mortgaged premises to James Hunter, who thereafter and before the assignment executed a second mortgage upon the same property, by virtue of which, subsequent to the assignment, the same was sold by the sheriff and the title thereto, subject to the prior mortgage, became vested in Margaret D. Hunter, who died in May, 1891, intestate. And in December of the same year, by partition among her heirs, such title

became vested in Wm. D. Hunter. There then remained unpaid on the first loan the sum of $10,000. However, such title so vesting in Wm. D. Hunter did not include all the lands embraced in the original mortgage, some having been released meantime as hereinafter stated.

On May 26, 1891, the administrator entered judgment on the bond accompanying the first mortgage; and on November 18, 1892, he assigned the bond and mortgage to James M. Connely, the father-in-law of Wm. D. Hunter, for the consideration of $10,000.

Between the date of the assignment for benefit of creditors and the time of the transfer of the bond and mortgage to Connely, the holder of the first mortgage had released from the lien thereof twelve separate pieces of land; some of which were released for the nominal consideration of one dollar each. And it does not appear that the original mortgagors, or their assignee, consented to such release or had knowledge thereof. On November 23, 1894, at the instance of Connely and on the judgment entered on the bond as aforesaid, all of the unreleased part of the land included in the first mortgage was sold by the sheriff for $2,000, at which sale Connely became the purchaser, and on the same day conveyed a portion of the premises so bought by him to James Dunlap for $15,000. Two months later Connely assigned the mortgage and judgment entered on the bond to his son-in-law, Wm. D. Hunter, for the consideration of one dollar; and the latter same day reassessed the damages on the judgment at $9,281.66. On February 7, 1895, Connely, also for the consideration of one dollar, made a deed to his said son-in-law for the balance of the land included in the sheriff's sale "subject to existing encumbrance." On the 5th of the following June, said Wm. D. Hunter sold the land conveyed to him by the last named deed to James B. Johnson for $12,000, "clear of encumbrance"; by various transfers, the first mortgage and judgment on the accompanying bond became vested in appellant in 1907. Since that date the judg-

ment has been twice revived, and on each occasion judgment was entered for want of an appearance, on two returns of nihil habet. The last of these judgments was entered February 20, 1914, at which time the damages were assessed at $22,351.22. James Hunter died in 1896, John Field in 1904 and John Hunter in 1910. The assignee filed a partial account in 1889 and a final account in 1897, both being duly audited and confirmed, and no claim being presented on account of the first mortgage and bond at either of the audits.

In 1906, Herman H. Wilson was appointed substituted trustee in place of John Field, then deceased. And in 1911 the substituted trustee filed an account showing a balance in his hands as the proceeds of a private sale of real estate, formerly the property of John Hunter. An auditor was appointed to pass upon exceptions and report distribution of the balance; and before him appellant presented his claim on the revived judgment. Other claims amounting to $100,976.07, were also presented and proven before the auditor; and to such other claims the net fund for distribution, amounting to $1,-790.79, was distributed by the auditor and court below, to the exclusion of appellant's claim; and this appeal was taken from the final decree of distribution of the fund.

We entirely agree with the conclusion reached by the court below. Where the mortgagor has parted with his title to the mortgaged premises, a release of a part thereof by the mortgagee, without the knowledge or consent of the mortgagor, will discharge the latter from personal liability for any loss to the mortgagee resulting from a deficiency in the proceeds of a subsequent sale in foreclosure proceedings: Meigs v. Tunnicliffe, 214 Pa. 495, see opinion by Mr. Justice STEWART. By such release the mortgagee assumes the risk of the unreleased portion of the property being of sufficient value to secure his debt. That he was not mistaken in this case appears from the fact that shortly after the sheriff's sale such un-

released property was resold for more than double the amount unpaid on the mortgage. However, in the absence of fraud or collusion at the sheriff's sale, the profits on such resales would not enure to the benefit of the original mortgagors.

The rights of creditors were fixed by the assignment; and while the confession of judgment thereafter upon the bond would as against the mortgaged premises relate back to the recording of the mortgage, it would not give the obligee in such bond any rights superior to those of other creditors as to the balance of the assigned estate. The entry of such judgment did not create a lien on land, aside from the mortgaged premises, which had previously passed from the mortgagors by deed of assignment for benefit of creditors: Cowan, Casey & Hutkoff v. Penna. Plate Glass Co., 184 Pa. 1.

The Act of April 2, 1822, 7 Smith's Laws, 551 (Stewart's Purdon, Vol. 1, page 1185), to which our attention was called at bar, authorizes the collection of the mortgage debt from the unreleased part of the premises, and provides for the protection of the rights of the respective part owners under such circumstances, but makes no reference to the personal liability of the mortgagor, and is not applicable to this case.

As in our opinion the release above stated of parts of the mortgaged premises is a complete answer to appellant's claim on the fund for distribution, it is not deemed necessary to discuss other features of the case.

The assignments of error are overruled and the decree affirmed at the costs of the appellant.