Greater Adelphia Building and Loan Association
*v.* Trilling et al., Appellants.

362

Argued May 11, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Harry Shapiro,* for appellants.

*Emanuel Moss,* of *Moss & Moss,* for appellee.

OPINION BY MR. JUSTICE MAXEY, June 26, 1936:

In 1923 Morris Goldenberg, owner of the premises at 5415 Berks Street, Philadelphia, executed a bond and second mortgage on that property in the amount of $2,500 to plaintiff's predecessor, the Coöperative Building and Loan Association, under and subject to a first mortgage of $5,000. At that time Goldenberg purchased 15 shares of the 33d series of the association's stock, assigning to it all his right, title and interest therein as collateral security for payment of the second mortgage. By the assignment the association received the right to appropriate the value of the stock for payment of the debt due it on his bond.

In 1926 the mortgagor conveyed the property to appellants, Trilling and his wife, under and subject to both mortgages. They subsequently delivered to the building and loan association their bond conditioned upon payment of contributions upon the stock aforesaid, together with interest, premiums, fines and taxes, all as set forth in the original bond and mortgage, and upon performance by them of "all the covenants and stipulations in the said bond and mortgage contained for and during the full period and term of the running of the said stock in the 33d Series." At that time Goldenberg's equity in the stock was not assigned to appellants. In November, 1929, however, appellants conveyed the property to Cluff, likewise under and subject to payment of both mortgages. On the same day, Goldenberg assigned to appellants his interest in the 15 shares of stock, under and subject to the prior right

of the association to hold the stock as security for the debt. Likewise on the same day appellants assigned the stock to Cluff, subject in the same manner to the prior rights of the association. In this assignment it was expressly stated that the transfer of the stock, or any subsequent transfer, payment of interest and dues by the assignee, or assumption by him of the loan, should not in any way affect the lien of the building and loan association. The assignment authorized its secretary to transfer, assign, and set over the stock to Cluff subject to the rights of the association. A few days later Cluff gave the association his bond in the amount of the mortgage, $2,500, conditioned as was appellants' bond.

In November, 1932, without notice to appellants, the Coöperative Building and Loan Association, was merged, with two other building and loan associations, into the Greater Adelphia Building and Loan Association, the plaintiff herein. At the time of the merger Cluff was the registered owner, upon the books of the association, of the 15 shares originally taken out by Goldenberg. By the merger the assets of the three associations were pooled and it was agreed that the merged association should set up various reserves for depreciation of mortgage loans, delinquent taxes, stock loans, etc., but it was stipulated that each shareholder in the constituent associations should receive the same number of shares as he held prior to the merger. The 15 shares of the 33 series of the former coöperative association, held in Cluff's name, were renumbered so as to become the 19th series of the plaintiff association. Prior to the merger the shares had been credited with a paid-in value of $1,801.75. When the merger was consummated the shares were revalued, after a reappraisement of the assets of the merged corporation, and were credited with a value of $631.00.

Cluff made payments of $180 on the shares after the merger, but thereafter defaulted, and the appellee asso-

ciation, plaintiff below, entered judgment on appellants' bond, the default averred being Cluff's failure to pay dues, premiums and interest. Appellants obtained a rule to open the judgment and let them in to a defense, which was discharged and their petition dismissed. They appealed to the Superior Court which, in an opinion by Judge PARKER (121 Pa. Superior Ct. 469, 183 A. 651), affirmed the judgment of the court below. This court granted an appeal.

Appellants' first contention is that their bond was discharged by performance, since by a literal interpretation of its terms it was conditioned upon payments being made during "the full period and term of the running" of stock of the old coöperative association of the 33d series, which ceased to exist as such after the merger and became the 19th series in the plaintiff association. The evidence is clear, however, that the merger effected no change in the identity of the stock assigned. It was merely renumbered for convenience in setting up the books of the new company, and after the merger continued its existence, but with a new nomenclature. The essential nature of the covenant in appellants' bond was, in reality, to make the stipulated payments until the value thereof equalled the mortgage debt, when in the normal course appropriation of the stock would ensue and the debt would be cancelled. "The payment of these dues is an indirect payment on account of the loan, as the payment increases the value of his stock and thus adds to the collateral pledged by means of which payment is to be made in the end": *Freemansburg B. & L. Assn. v. Watts,* 199 Pa. 221, 229, 48 A. 1075. As Judge PARKER speaking for the Superior Court said: "The obligation to pay dues, interest, and premiums is a specification with reference to how the principal sum loaned with interest may be discharged." Because the method of payment so specified is necessarily altered by a merger and reclassification of stock affords no

basis for the claim that the obligation to pay the debt has been complied with.

We are urged to hold, however, that, as between itself and Cluff, the appellee association so dealt with the stock which it held as collateral for the debt as to amount to a release, by force of law, of appellants' obligation on their bond. The only dealing complained of is that the association, at the time of the merger and before any default by Cluff, set up reserves for depreciation and other liabilities on its mortgage holdings which resulted in assigning a decreased paid-in value to the stock. But appellants' obligation on their bond to the association was not as surety for the performance by Cluff, their grantee, of the terms of his bond which he subsequently gave to the association. As in *Hampton v. Congress B. & L. Assn.*, 300 Pa. 501, 505, 150 A. 895, Cluff, the purchaser, "voluntarily made [him] self liable to the association by the execution of a bond, but this was merely additional collateral held by the creditor for its own protection." The two bonds which appellee held were independent and separate undertakings of the respective obligors, either or both of which the association was entitled to enforce when the situation warranted such a course.

A mortgage is essentially a debt to which is attached some form of collateral securing its payment. In the ordinary mortgage the sole security is the real estate conveyed to the mortgagee; if the debt is unpaid, the mortgagee may resort to that real estate for its payment. In the case of a typical building and loan mortgage, the collateral for the debt assumes two forms: (1) the land, and (2) the stock in the association purchased by the borrower, the mortgagor, and assigned to the association. As in the instant case, the assignment of the stock affords the mortgagee association the right to appropriate the value of the stock to the payment of the debt. The debt is not paid pro tanto,

however, by payments on the stock; appropriation must take place before any part of the debt is satisfied: *Orient B. & L. Assn. v. Freud,* 298 Pa. 431, 436, 148 A. 841; *Williams et al., v. Wenger,* 319 Pa. 73, 79, 179 A. 242. The mortgagor can, of course, compel the association, if solvent, to credit the value of the stock towards payment of the debt: *Orient B. & L. Assn. v. Freud,* supra; *Auto B. & L. Assn. v. Hall,* 117 Pa. Superior Ct. 104, 116, 177 A. 581. As respects the collateral securing the mortgage debt, the mortgagor and his grantee occupy, respectively, the positions of surety and principal. The mortgagor is entitled at all times to have the security applied on the debt. As respects the real security, the land, the mortgagee may not release it or any portion of it from the lien of the mortgage, or otherwise deal with it as between itself and the mortgagor's grantee so as to destroy or impair its value as security for the debt, thus tending to enlarge the mortgagor's personal liability on his bond or original undertaking: *Meigs v. Tunnicliffe,* 214 Pa. 495, 63 A. 1019; *Hunter's Assigned Est.,* 257 Pa. 32, 101 A. 79. The reason for this, as Judge KELLER stated in *Zusin v. Wharton Business Men's B. & L. Assn.,* 107 Pa. Superior Ct. 181, 188, 163 A. 377, is that the mortgagor, or one in succession to his rights (as are defendants in the case at bar), "would have the right to pay the original debt or obligation to the [mortgagee] and require the assignment to her or him, respectively, of the securities held by the [mortgagee] for its payment." The same rule applies to the mortgagee's treatment of the other security which it holds, the stock assigned as collateral and the payments made upon it: *Green et al. v. Second Allegheny Bldg. Assn.,* 311 Pa. 305, 166 A. 865; *Orient B. & L. Assn. v. Freud,* supra. See also the cases cited above, where surety bonds were held as additional collateral. There can be no doubt that any agreement or dealing with the stock assigned, as between mortgagee

and grantee, which materially lessens or adversely effects its value as security for the grantor's debt, will discharge his liability on his bond.

In the case before us the appellee, in effecting the merger, did nothing with the stock held as security which it was not entitled by law to do, or which appellants could have prevented. The possibility of merger was within the contemplation of the parties when the bond was given; it is a practical business expedient widely resorted to in the field of building and loan law, intended to be beneficial in effect and ordinarily not prejudical to the rights of any stockholder. In establishing reserves and revaluing its membership stock the association did no more than avail itself of the benefit of an accepted legal procedure. There was no showing that the revaluation was, in fact, prejudicial to appellants' interest in having the stock applied on the debt. They could have compelled such application at the time when they assigned it to Cluff, their grantee: (see the cases cited supra). In assigning it they parted with their interest in it and authorized its transfer on the association's books. They could not have voted against the merger or done anything else to prevent it; hence notice to them of the merger would have been unavailing. The rule stated by Judge KELLER in *Zusin v. Wharton Business Men's B. & L. Assn.*, supra, at page 189, must be held to apply: "If the creditor has taken only such steps as the contract expressly authorized him to take, or as the law annexed to the contract, as part of its terms, then the surety cannot be heard to complain, for the deposit was made subject to the right of the creditor to take those very steps, without releasing or effecting the surety."

There was no abuse of discretion in the refusal of the lower court to open judgment on the bond.

The judgment is affirmed, costs to be paid by appellants.