## Olney Bank and Trust Company Case.

Argued January 3, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Joseph S. Clark, Jr.,* with him *John Whitaker Lord, Jr.,* Special Deputy Attorney General, *Orville Brown,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellant.

*I. Emanuel Sauder,* with him *Arthur S. Minster,* for appellee.

·OPINION BY MR. JUSTICE STERN, February 1, 1940:

This case was here before (328 Pa. 461), but now, unlike then, it is necessary to set forth the controlling facts.

In 1927, the Olney Bank & Trust Company loaned to Michael E. Drutt the sum of $133,000 to be used for the erection of thirty-nine houses on North Franklin Street between Nedro and Champlost Avenues in the City of Philadelphia. Drutt delivered to the bank his note in that amount, together with his bond and mortgage for $150,000 secured upon the land on which the houses were to be erected. In 1929, some of the houses having been finished and sold, his indebtedness to the bank had been reduced to $55,000, but sixteen houses were still uncompleted although all of the borrowed money had been exhausted. The bank thereupon entered into an arrangement with George Schwinn whereby he was to take title to these houses and complete them, the bank loaning him $8,000, for which he gave it his promissory note. In 1931 Schwinn and his wife gave

the bank their note in the sum of $55,000 as additional security for the balance then remaining due on the Drutt loan, with the sixteen properties as collateral, the title to which they deeded to the bank for that purpose. They also gave their note for $8,000 to renew the one previously executed by Schwinn alone.

The Secretary of Banking, in October, 1931, took possession of the business and property of the Olney Bank & Trust Company, and in 1933 entered judgment against Drutt on his bond of $150,000. In April, 1934, by authority of the court, he sold the mortgage at public sale, together with Drutt's bond and the judgment thereon, and himself became the purchaser on a bid of $30,000, taking the mortgage out of the account as collateral and setting it up on his books as an asset owned outright. The net proceeds of the sale, amounting to $29,925, he applied to the reduction of the then existing indebtedness of $55,000. In August, 1934, he sold the sixteen properties at public sale, and himself purchased them for $50; this sale was made subject to the Drutt mortgage, which was advertised as being of a reduced principal sum of $72,000.

The Secretary, as receiver, brought suit in the Common Pleas Court against Schwinn and his wife to recover on their notes of $55,000 and $8,000, less the credit of $29,925 resulting from the sale of the Drutt mortgage, bond and judgment. In that suit the controversy centered largely around the contention that $72,000 was not the proper balance remaining due on the mortgage, and that the sale of the properties was therefore invalid. The court gave binding instructions against both defendants for the full amount claimed by the receiver; but subsequently ruled that Mrs. Schwinn was not liable on the notes, and awarded a new trial as to George Schwinn. Appeal was then had to this court, which held that Mrs. Schwinn was only a nominal party in the transactions, that no judgment by or against her could be recovered, and that the granting of a new trial

to Schwinn was justified. In the course of the opinion it was said (328 Pa. 462) : "The sale of the properties, with a statement that they were subject to a $72,000 mortgage, did not correctly portray the situation. In reality they were subject to whatever was actually due the bank. The real question in the case is what in fairness and equity is George Schwinn's indebtedness."

Treating the 1934 sale of the properties under and subject to a mortgage debt of $72,000 as a nullity, (no deed having been executed in pursuance of such sale), the receiver, who had continued as theretofore to hold the houses as collateral security, sold them, in 1936 and 1937, by authority of the court, at various private sales to individual purchasers, free and clear of the lien of the mortgage altogether. The net proceeds realized from these sales amounted to approximately $44,000.

Instead of going ahead with the new trial which had been granted, the parties decided that the questions involved could best be determined in connection with the adjudication of the receiver's fourth account, which came up for audit in 1938. At this audit Schwinn contended that he was entitled to credit for the $44,000 received from the sales of the properties, but the receiver took the position that these proceeds must first be applied to the satisfaction of the mortgage which he had purchased, and, if this were done, there would not be any balance left to be credited to Schwinn's account. The auditing judge sustained Schwinn's position and held that this credit should be allowed him, with the result that the court found that not only did Schwinn owe nothing to the receiver but that the latter was indebted to Schwinn in the sum of $10,841.35. From a decree to that effect the receiver now appeals.

There is a motion by Schwinn to quash the appeal on the ground that the receiver is merely a stakeholder having no interest in the decree, and that the Act of April 22, 1937, P. L. 337, section 1, which amends section 11 of the Act of May 15, 1933, P. L. 565, by giving

a right of appeal to a receiver who is a party to a proceeding in which a judgment, decree or other order is entered for or against him, is unconstitutional as violating Article III, section 7, of the Constitution of the Commonwealth. This motion to quash is dismissed. Entirely apart from this statutory authority, the receiver has a right of appeal in this proceeding. This is not the case of a controversy with a distributee seeking a preference, or between different classes of distributees, but one in which the receiver is seeking partly to recover a sum of money alleged to be due to the fund, and partly to defend a counterclaim against it. Under such circumstances his right to appeal has always been recognized: *Cameron v. City Bank of York,* 284 Pa. 187, 189; *Appeal of Peter G. Cameron,* 91 Pa. Superior Ct. 495, 498, 499.

As to the merits of the case, it is clear that the learned auditing judge erred in allowing to Schwinn the credit of $44,000 which represented the proceeds of the sales of the sixteen houses. When the receiver, in 1934, sold, and himself purchased, the Drutt bond, judgment and mortgage for $30,000, and allowed credit in that amount in reduction of Schwinn's indebtedness, the mortgage, as it then stood, became the absolute property of the receiver, free and clear of any equity which had attached to it as collateral. When, later, he sold the houses, the equity in which, subject to this mortgage, he had also held as collateral, the $44,000 therefrom was realized, not from this equity, but as the purchase price of the unincumbered fee simple title. It is obvious that if the mortgage had then been held by a third party the receiver, in order to convey a clear title to the purchasers, would first have been obliged to pay off the mortgage, and the fact that he himself owned it was an immaterial circumstance. He was clearly entitled to apply the proceeds from the sales of the houses, not in reduction of the Schwinn indebtedness, but toward the liquidation of the mortgage owned by him in

his own right. Such an application left no overplus for the benefit of the Schwinn account, since the amount due to the receiver as owner of the mortgage was not, of course, reduced by the $30,000 which he had paid to purchase it, nor by any subsequent credits to which Schwinn may have become entitled; the mortgage being no longer held as collateral or subject in any way to the Schwinn account.

The court below was apparently impressed by testimony to the effect that when the bank received the note of $55,000 from Schwinn and his wife it "closed out" the Drutt account on its record cards. From this the court reached the unwarranted conclusion that the Drutt mortgage, having been given as collateral for his indebtedness, was thereby rendered worthless and did not represent a real asset when purchased by the receiver. All that the testimony indicated, however, was a recognition by the bank that Drutt was financially irresponsible, and, as the deputy receiver testified, it looked to Schwinn, "properties and mortgage," as the likely sources from which to recover the balance due, abandoning hope of making any collection from Drutt personally. No cancellation of the mortgage was ever requested, intended, or effected.

In order to arrive at the objective announced in the former opinion of this court,—to ascertain "what in fairness and equity is George Schwinn's indebtedness"— it is necessary to strike from the adjudication of the receiver's account the item of approximately $44,000 improperly allowed as a credit to Schwinn, the result being that, instead of the receiver owing Schwinn $10,841.35, Schwinn is indebted to the receiver in a substantial sum, the exact amount, with accumulated interest, to be computed by the court below.

The record is remitted for a modification of the decree in accordance with this opinion; costs to be paid out of the assets in the hands of the receiver.