Davis, Appellant, *v.* Kentwell Hall
Corporation et al.

Argued April 24, 1941. Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN, PATTERSON and PARKER,
JJ.

*Paul W. Knox,* of *Rambo, Rambo & Knox,* for appellant.

*Paul Maloney,* with him *Evans, Bayard & Frick,* for appellee.

OPINION BY MR. JUSTICE STERN, May 12, 1941:

Plaintiff, having obtained a judgment for $14,715 on a bond of defendant, issued an attachment-execution against Land Title Bank & Trust Company. From the answers to interrogatories and an agreed stipulation of facts it appears that the garnishee has in its possession upwards of $16,000 belonging to defendant, but it claims that defendant is indebted to it in an amount exceeding $200,000 in part payment of which it is entitled to appropriate the money in its hands. Plaintiff asserts that this alleged indebtedness was released by the garnishee prior to the attachment, and this raises the only issue in the case. The court gave judgment for the garnishee.

Defendant, Kentwell Hall Corporation, in pursuance of an application to the Real Estate Land Title & Trust Company (now Land Title Bank and Trust Company) for a loan to cover the erection of an apartment house in Philadelphia, deeded the premises to one Stout as straw man, and he executed to the Trust Company his bond and mortgage on the property in the sum of $200,000 to secure future advances by the Trust Company to finance the construction of the building; he then reconveyed the title to defendant. Subsequently the Trust Company made loans to defendant aggregating $175,300, for which the latter, together with one Davis,* gave the Trust Company their joint and several collateral notes, these notes setting forth that the

---

* On one of the notes, for $6,500, Davis did not join as co-maker.

$200,000 bond and mortgage previously executed were deposited as collateral security. The notes gave to the Trust Company as pledgee full power and authority, in case of default, to sell the bond and mortgage at public or private sale, with the right on its part to become the purchaser free and discharged from any equity of redemption, the makers to remain liable for any deficiency on the notes after a sale of the securities.

Some three or four years later, the notes being in default, the Trust Company, after written notice, sold the bond and mortgage at public auction, and itself bought them in for the sum of $200, which it credited on account of the amount due on the notes. After three more years the Trust Company commenced foreclosure proceedings on the mortgage. This was some two months after the Act of July 2, 1937, P. L. 2751, had been enacted. This act (which was subsequently declared unconstitutional in *Pennsylvania Company for Insurances on Lives and Granting Annuities v. Scott,* 329 Pa. 534, 198 A. 115) provided that before any execution should issue against the mortgaged premises on the foreclosure of any mortgage, the plaintiff should either file in court a statement certifying that he released and discharged the obligors and grantors and any other parties liable, directly or indirectly, on the mortgage debt and the owners of the property affected thereby from all personal liability on the mortgage debt, or should petition the court to fix the fair market value of the property to be sold. Acting in pursuance of that requirement, the Trust Company filed in the foreclosure proceedings a release, in the words of the statute, releasing and discharging the mortgagor and any other persons liable, directly or indirectly, to the plaintiff on the mortgage debt "for which the above entitled suit is brought" and the owners of the property affected thereby from all personal liability on the mortgage debt. The foreclosure being then proceeded with, the Trust Company bought in the property at sheriff's sale for the sum of $75.

It is this release which, according to plaintiff, discharged all liability of defendant to garnishee on the notes aggregating $175,300. We cannot agree with that contention. The case is ruled by the decision, and the accompanying discussion, in *Olney Bank & Trust Company Case*, 337 Pa. 357, 11 A. 2d 150. The time for defendant to have protected itself in this situation was when the collateral bond and mortgage executed by Stout were exposed at public sale and the Trust Company was permitted to purchase them on a merely nominal bid. By that purchase the Trust Company acquired an absolute title instead of its previous qualified one; it obtained the bond and mortgage free of all limitations which appertained to them when held as collateral, except that no greater recovery could be had thereon than the amount of the debt for which they were given as security: *First Trust Company v. Philadelphia Pure Rye Whiskey Distilling Co.*, 327 Pa. 145, 148, 192 A. 393, 394, 395. If a third person had purchased the bond and mortgage at the public sale, had commenced foreclosure proceedings on the mortgage, and had incidentally filed the release required by the Act of 1937, no one could doubt that such a release would have related only to the accompanying bond and not to the debt due the original pledgee from whom the collateral had been purchased. But the Trust Company, as purchaser, held the bond and mortgage in exactly the same manner as a third person purchasing them would have done; when it foreclosed the mortgage and filed the release from personal liability on the mortgage debt, it was acting in its new capacity as independent owner of the mortgage and without reference to its status as a creditor on the notes. By the words *"mortgage debt* for which the above entitled suit [the mortgage foreclosure] is brought" was meant, obviously, the debt on the bond accompanying the mortgage under foreclosure and not another debt for which originally the bond and mortgage had been given as collateral security. The release

was given solely to meet the mandate of the Act of 1937, and all who are familiar with the historical background of that act and other deficiency judgment legislation know that those statutes were designed merely to prevent a mortgagee from recovering on the mortgagor's bond a deficiency which did not give credit for the fair value of the mortgaged property.

The court was right in holding that the release was a discharge only of personal liability on the bond accompanying the mortgage, and not of defendant's liability on the notes held by the garnishee.

Judgment affirmed.