**FEDERAL DEPOSIT INS. CORPORATION v. STEINMAN et al.**

**Civ. A. No. 2696.**

District Court, E. D. Pennsylvania.

Dec. 28, 1943.

646

Harry Shapiro, Maxwell S. Rosenfeld and Hirsh W. Stalberg, all of Philadelphia, Pa., for plaintiff.

Morris M. Wexler and Morris Weisman (of Wexler and Weisman) both of Philadelphia, Pa., for defendant Steinman.

Philip Richman and Jacob S. Richman (of Richman & Richman), both of Philadelphia, Pa., for defendant Lesse.

BARD, District Judge.

This matter arises on motions of each of the defendants to vacate a judgment entered against them by confession on a bond and warrant, and on a motion by the defendant Steinman to dissolve an attachment issued pursuant to such judgment. To these motions plaintiff filed answers. A hearing was held before me at which a large volume of evidence was adduced. Before considering the various grounds which defendants have assigned in support of their motions, it is necessary to summarize the facts appearing from this evidence.

In 1926 defendants purchased a parcel of real estate from Nucom Kenin and Max Shapiro. For an unpaid balance of $100,000 they executed bonds secured by two mortgages of equal lien, in the amount of $50,000 each, one running to Kenin and the other to Shapiro, and each payable in two years. At the time of the maturity of these mortgages, defendants, in order to arrange for their payment, borrowed from the Market Street Title & Trust Company the sum of $80,000 upon their demand note. With this sum and $20,000 of other funds, defendants paid the mortgage debt and the two bonds and mortgages were duly assigned to the Market Street Title & Trust Company as collateral security for the $80,000 note. By payments from funds realized from the proceeds of the sale of various portions of the mortgaged property released by the trust company, the amount of the defendants' note was reduced to $30,000 by 1930, and at that time, in consideration of a reduction in the interest rate, defendant Steinman conveyed a piece of real estate in Frankford, Pennsylvania, to a nominee of the trust company as additional collateral for the payment of the balance due on the note. A further credit against this balance reduced the principal amount of the loan to $28,500.

In 1938 the Integrity Trust Company, which was the successor to the Market Street Title & Trust Company, demanded payment of defendant Steinman of the balance of $28,500, in default of which it advised him it would sell the mortgage collateral at public sale. No payment being made, it thereupon sold the two $50,000 bonds and mortgages at public sale and purchased them itself for $14,000, for which amount it gave defendants credit against the balance due on the note, reducing the principal thereof to $14,500. Subsequently it foreclosed on the Kenin mortgage and became the purchaser of the mortgaged real estate for a nominal consideration.

Shortly thereafter negotiations were begun by the defendant Steinman for the satisfaction of the $14,500 balance of the principal due on the note. Apparently in November 1939 Steinman's counsel submitted an offer to pay Integrity $1,000 in cash and to execute a quitclaim deed to the Frankford real estate held by the Integrity as collateral, and was advised by an officer of Integrity that such offer was acceptable to it. A written agreement between Integrity and Steinman was thereupon prepared by counsel for Integrity. This agreement recited that the loan had been reduced to $14,500 and that certain other sums were owing by Steinman to Integrity; that the Frankford real estate was held by a nominee of Integrity as security for these obligations; that the parties desired to settle this indebtedness; that the Frankford real estate should become the absolute property of Integrity, and that Steinman and his wife should execute and deliver to it a quitclaim deed thereto at the time of the execution of the agreement; that Steinman surrender to Integrity all his interest in other collateral held by it for his debts to it; that Steinman agreed to pay Integrity $1,000, $500 at the time of the signing of the agreement and $100 per month for five months thereafter; that after the receipt of these payments and compliance by Steinman with the other terms of the

agreement, Integrity would release him of all claims and deliver to him an order to satisfy the judgment entered in the foreclosure proceedings. The agreement further provided that in the event of any further default by Steinman, Integrity should be entitled to apply any payments on account of his indebtedness and to sell the Frankford real estate, provided that "nothing herein shall be taken to require any such sale or to affect the absolute and unconditional ownership of Integrity in and to the said premises if Integrity does not elect to disaffirm this agreement and to deprive Steinman of the benefits hereof." It was further provided that the agreement was in no way to discharge or release the defendant Lesse from his liability to Integrity.

The agreement was dated November 1939, but the date for its execution was left blank. Integrity executed its copy, but it was never delivered to Steinman. In January of 1940 the plaintiff, Federal Deposit Insurance Corporation (hereinafter referred to as F.D.I.C.), made a loan of $20,000,000 to Integrity, which transferred all its assets to F.D.I.C. and ceased to do business. Among the real estate assets conveyed to plaintiff was the Frankford real estate registered in the name of a nominee of Integrity. Thereafter Steinman signed his copy of the agreement and repeatedly tendered to plaintiff the sum of $1,000 and a quitclaim deed for the Frankford real estate, but plaintiff did not accept these tenders. Some time later it started suit against the present defendants in the Court of Common Pleas of Philadelphia County, but it failed to proceed in that action.

On August 3, 1942 plaintiff entered judgment against defendants upon a confession signed by an attorney pursuant to the warrant contained in the bond accompanying the $50,000 mortgage of which Max Shapiro was the original mortgagee. Damages were assessed in the amount of $101,025.98, and an attachment sur judgment against the Corn Exchange National Bank & Trust Company was issued. Defendants thereupon filed the present motions.

Before considering the various defenses presented by both defendants and an individual defense urged by the defendant Steinman, there is an individual defense urged by the defendant Lesse which in my opinion operates to relieve him from liability upon the debt upon which this judgment was entered, and which will therefore be disposed of first. This defense is based upon the following additional facts not set forth above. The property originally mortgaged to Kenin had a frontage of 250 feet beginning at a corner. By the terms of each mortgage, the mortgagee was obliged to release from the lien thereof the 125 feet adjacent to the corner upon the payment of $30,000 and the other 125 feet upon the payment of $20,000. In August 1929, in consideration of the sum of $20,000, plaintiff's predecessor released 100 feet of the latter half from the lien of the mortgages. Thereafter, in November 1929, defendant Lesse conveyed all his title in the remaining 150 feet to Steinman. In July 1930, without the knowledge of Lesse, plaintiff's predecessor released the remaining 25 feet of the inside tract and 75 feet of the corner tract from the lien of the two mortgages in consideration of the payment by Steinman to it of $30,000. There was thus left subject to the mortgages 50 feet of the corner tract.

Defendant Lesse contends that the mortgagee's release from the lien of the mortgages of the 100 feet of the mortgaged property in July 1930 operates as a release to him of further liability for the debt secured by the mortgage under the rule established by a number of cases and set forth in Greater Adelphia Building & Loan Association v. Trilling, 323 Pa. 361, at page 367, 185 A. 716, at page 718, as follows: "As respects the real security, the land, the mortgagee may not release it or any portion of it from the lien of the mortgage, or otherwise deal with it as between itself and the mortgagor's grantee so as to destroy or impair its value as security for the debt, thus tending to enlarge the mortgagor's personal liability on his bond or original undertaking. Meigs v. Tunnicliffe, 214 Pa. 495, 63 A. 1019, 112 Am.St.Rep. 769, 6 Ann.Cas. 549; Hunter's Assigned Estate, 257 Pa. 32, 101 A. 79. The reason for this, as Judge Keller stated in Zusin v. Wharton Business Men's B. & L. Assn., 107 Pa.Super. 181, 188, 163 A. 377, 380, is that the mortgagor, or one in succession to his rights (as are defendants in the case at bar) 'would have the right to pay the original debt or obligation to the (mortgagee) and require the assignment to her or him, respectively, of the securities held by the (mortgagee) for its payment.' "

648

■ Plaintiff urges in reply, first, that defendant Lesse does not come within this rule because in the original mortgages he consented to the release of this security for the mortgage debt. It points out that, by the terms of the mortgages, the mortgagee was required to release the entire 250 foot tract from the lien of the mortgages for $50,000, whereas it actually released only a total of 200 feet for that sum, and that accordingly defendant Lesse's obligation was reduced by that sum and there still remained the 50 foot tract as security for the balance of the debt.

The difficulty with plaintiff's argument is that each of the two mortgages require a payment of $30,000 to the mortgagee in order that the 125 foot corner tract be released from its lien and it would therefore have required a payment of $60,000 to justify the mortgagee in releasing that tract from the lien of both mortgages. Plaintiff therefore cannot rely on the provisions of the mortgages as evidencing the consent of Lesse to the release of the 100 foot tract for $30,000 after he had conveyed his interest in the mortgaged premises to Steinman.

■ Plaintiff further contends, however, that under the Pennsylvania law the mortgagee's release of a portion of the mortgaged security in the hands of the mortgagee's grantee does not operate as a complete discharge of the mortgagor, but as a discharge only to the extent that the mortgagor can establish that he has been prejudiced thereby. This contention is not supported by the Pennsylvania authorities. In the leading case of Meigs v. Tunnicliffe, 214 Pa. 495, 63 A. 1019, 112 Am.St.Rep. 769, 6 Ann.Cas. 549, it was held that a showing by a mortgagor that the mortgagee had released a portion of the mortgaged property in the hands of the mortgagee's grantee, and without the mortgagor's consent, operated as a complete discharge of the mortgagor from the mortgagee's debt. No showing by the mortgagor of the extent of the prejudice or injury resulting from the release was required. In Assigned Estate of James Hunter, 257 Pa. 32, at page 35, 101 A. 79, at page 80, the Supreme Court of Pennsylvania said: "Where the mortgagor has parted with his title to the mortgaged premises, a release of a part thereof by the mortgagee, without the knowledge or consent of the mortgagor, will discharge the latter from personal liability for any loss to the mortgagee resulting from a deficiency in the proceeds of a subsequent sale in foreclosure proceedings. Meigs v. Tunnicliffe, 214 Pa. 495, 63 A. 1019, 112 Am.St.Rep. 769, 6 Ann.Cas. 549, see opinion by Mr. Justice Stewart. By such release the mortgagee assumes the risk of the unreleased portion of the property being of sufficient value to secure his debt."

It is clear, therefore, that under the Pennsylvania law the mortgagee cannot release a portion of the security from the lien of a mortgage without the consent of the mortgagor, and thrust upon the mortgagor the burden of establishing at some later date the extent to which he was thereby prejudiced. The motion of defendant Lesse to vacate the judgment against him must be granted.

■ Turning now to the defenses offered by the remaining defendant, there are first presented several grounds upon which he asserts that he has been discharged of all liability to Integrity and to plaintiff as its successor. The first of these is that he was discharged of his liability to Integrity by its failure to file a petition under the Pennsylvania Act of July 16, 1941, P.L. 400, 12 P.S. § 2621.1 et seq., to fix the fair value of the mortgaged property sold at foreclosure under the Kenin mortgage. Section 1 of this Act, 12 Purd.Stat. § 2621.1, provides: "Whenever any real property has heretofore been or is hereafter sold, directly or indirectly, to the plaintiff in execution proceedings and the price for which such property has been sold was or is not sufficient to satisfy the amount of the judgment, interest and costs and the plaintiff seeks to collect the balance due on said judgment, interest and costs, the plaintiff or plaintiffs shall petition the court having jurisdiction to fix the fair market value of the real property sold as aforesaid. Said petition shall be signed and sworn to by the plaintiff or plaintiffs." Section 7 of the Act, 12 Purd. Stat. § 2621.7, provides: "The plaintiff or plaintiffs shall file all petitions in accordance with section one and section two of this act not later than six months after the sale of any real property: Provided, however, That, if the sale occurred prior to the effective date of this act, the plaintiff shall file such petition within six months after the effective date of this act. In the event no petition is filed within such period, the debtor, obligor, guarantor and

any other person liable directly or indirectly to the plaintiff or plaintiffs for the payment of the debt shall be released and discharged of such liability to the plaintiff or plaintiffs."

Since the Integrity failed to file a petition in accordance with the provisions of this Act, neither it nor plaintiff as its successor could take action upon the deficiency judgment rendered in the foreclosure proceedings on the Kenin mortgage. But, under the Pennsylvania law, where a foreclosure is had on a bond and mortgage originally given as collateral for another obligation, but sold prior to foreclosure thereunder, the failure of the mortgagee to file a petition under the Act does not affect the liability of the mortgagor for the original debt for which the bond and mortgage were collateral. In Davis v. Kentwell Hall Corporation, 342 Pa. 1, 19 A.2d 902, a creditor of an obligation for which a bond and mortgage had been pledged as collateral sold this collateral security at public sale and became the purchaser thereof. It then foreclosed on the mortgage and filed a release of the obligor from the mortgage debt under the terms of the 1937 Deficiency Judgment Act.[1] The Supreme Court of Pennsylvania held this release did not operate to relieve the obligor from the principal obligation and that the creditor, like any third person who might have purchased the collateral when sold, obtained it free and clear of any restrictions upon it as collateral, except that no greater recovery thereon might be had than the balance due on the debt originally secured thereby. Said the court at page 4 of 342 Pa., at page 903 of 19 A.2d: "It is this release which, according to plaintiff, discharged all liability of defendant to garnishee on the notes aggregating $175,300. We cannot agree with that contention. The case is ruled by the decision, and the accompanying discussion, in Olney Bank & Trust Co. Case, 337 Pa. 357, 11 A.2d 150. The time for defendant to have protected itself in this situation was when the collateral bond and mortgage executed by Stout were exposed at public sale and the Trust Company was permitted to purchase them on a merely nominal bid. By that purchase the Trust Company acquired an absolute title instead of its previous qualified one; it ob-

tained the bond and mortgage free of all limitations which appertained to them when held as collateral, except that no greater recovery could be had thereon than the amount of the debt for which they were given as security. First Trust Company v. Philadelphia Pure Rye Whiskey Distilling Co., 327 Pa. 145, 148, 192 A. 393, 394, 395. If a third person had purchased the bond and mortgage at the public sale, had commenced foreclosure proceedings on the mortgage, and had incidentally filed the release required by the Act of 1937, no one could doubt that such a release would have related only to the accompanying bond and not to the debt due the original pledgee from whom the collateral had been purchased. But the Trust Company, as purchaser, held the bond and mortgage in exactly the same manner as a third person purchasing them would have done; when it foreclosed the mortgage and filed the release from personal liability on the mortgage debt, it was acting in its new capacity as independent owner of the mortgage and without reference to its status as a creditor on the notes. By the words 'mortgage debt for which the above-entitled suit (the mortgage foreclosure) is brought' was meant, obviously, the debt on the bond accompanying the mortgage under foreclosure and not another debt for which originally the bond and mortgage had been given as collateral security."

Since in the case at bar Integrity had sold the bonds and mortgages it held as collateral and had credited defendants with the purchase price thereof, it having become the purchaser at such sale, held them free and clear of any restrictions pertaining to them as collateral other than that the amount to be recovered thereon could not exceed the balance due on the note for which they were originally collateral. Its failure to fix the fair value of the mortgaged property bars plaintiff from enforcing the deficiency judgment entered in the proceedings, but in no way affects its right as a creditor on the debt originally secured or on other collateral for that debt which it had purchased.

The second contention of the defendant is met by these same principles. This contention is that since the Shapiro mortgage was discharged by the foreclo-

---

[1] Act of July 2, 1937, P.L. 2751, declared unconstitutional by the Supreme Court in Pennsylvania Company for Insurances on Lives and Granting Annuities v. Scott, 329 Pa. 534, 198 A. 115.

sure of the Kenin mortgage of equal lien, Bonstein v. Schweyer, 212 Pa. 19, 61 A. 447, the accompanying bond was rendered "functus officio" and was no longer an effective obligation. As authority for this proposition, defendant has cited cases holding that one obligation of a debtor cannot be security for another except in so far as is necessary to give the creditor the benefit of a lien. Without deciding whether these authorities would support this contention if the Shapiro bond and mortgage given as collateral had not been sold by the creditor, it appears clear from the Davis case, supra, that, having been sold, the bond and mortgage in the hands of a purchaser were no longer subject to any of the restrictions upon them as collateral, except that the amount which may be realized thereon is limited by the amount of the debt for which they were originally given as security.

The defendant also presents the defense that he was released from all liability to Integrity as a result of an agreement of settlement in 1939. The facts with respect to this alleged settlement have been recited above, and it is clear that the written agreement of settlement cannot be relied upon because the parties never delivered to each other the copies of the agreement which each had signed.

Steinman contends, however, that an oral agreement of settlement had been consummated between him and Integrity, under which it had agreed to release him of all liability in consideration of his payment of $1,000 and delivery of a quitclaim deed to the Frankford real estate held by Integrity as collateral, and that since the written agreement was merely intended to embody the terms of this oral agreement, the latter is effective and enforceable, although the former was never executed. Ketchum v. Conneaut Lake Co., 309 Pa. 224, 163 A. 534; Schermer v. Wilmart, 282 Pa. 55, 127 A. 315. In the Ketchum case the Supreme Court of Pennsylvania stated the applicable rule as follows at page 229 of 309 Pa., at page 535 of 163 A.: "Where the parties have agreed orally to all the terms of their contract, and a part of the mutual understanding is that a written contract embodying these terms shall be drawn and executed by the respective parties, such oral contract may be enforced, though one of the parties thereafter refuses to execute the written contract. Schermer v. Wilmart,

282 Pa. 55, 58, 127 A. 315; Taylor v. Stanley Co. of America, 305 Pa. 546, 158 A. 157. In the instant case, the exact terms of the contract in suit are set forth in the previous written contract."

The difficulty with this contention is that the evidence does not support the conclusion that all the terms of the written agreement had been orally agreed upon, and that the original contract was intended merely to reduce them to written form. The only terms of the alleged oral agreement appearing from the evidence were the payment by Steinman of $1,000 and the execution of a quitclaim deed in return for a release of all liability by Integrity. The written agreement, on the other hand, was six pages in length, provided for the payment by Steinman of $500 at the time of the execution of the agreement and $100 monthly thereafter for five months, and the surrender of all his rights in any collateral held by Integrity, and it contained lengthy provisions as to the rights of Integrity in case of default by Steinman. If all these terms had been agreed upon orally, the evidence does not disclose that fact. Indeed, the contrary may be indicated by the fact that no explanation was offered by Steinman of his failure to execute the written agreement which was drafted in November 1939 or to tender payment and delivery of the agreed sum of the quitclaim deed until after the F.D.I.C. had succeeded to the rights of Integrity in January, 1940. Since the proof does not establish that the written agreement was intended merely to embody the terms of a previously consummated oral agreement, the defense that the debt of Steinman to Integrity was settled fails because the written contract of settlement was never delivered.

The further fact that the Frankford real estate was admittedly conveyed from the nominee of Integrity to plaintiff, by whom it is still held, urged by Steinman as binding plaintiff to the terms of the settlement agreement, cannot be so construed. Integrity had the right to retain title to that parcel of the real estate as security for the debt of defendant, and plaintiff succeeded to that right. The conveyance, therefore, in no way established that the Frankford real estate was received and is held by plaintiff in any manner other than as collateral for the debts of Steinman to Integrity.

Defendant attacks the irregularity of the entry of judgment on a number of grounds which require some comment. The first of these is that the procedure by which a judgment is entered by confession may not be employed in the federal courts since it does not conform to the procedure prescribed by the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. This contention has considerable persuasiveness, since it would certainly be in furtherance of the purpose of those rules to effect uniformity of procedure. But the scope of the rules is specified in Rule 1 to govern procedure "in all suits of a civil nature" in the federal courts. The right to enter judgment upon a confession contained in an instrument is a common-law right which may be exercised without the necessity of suit, i. e., service of process, pleading and judicial determination. Shure v. Goodimate Co., Inc., 302 Pa. 457, 153 A. 757; 34 C. J. 104. Since the Federal Rules of Civil Procedure are applicable only to "suits of a civil nature", they do not appear to preclude the exercise of a right to enter judgment by confession without the necessity of suit.

A second ground urged by the defendant is that the record does not disclose that the attorney who entered his appearance for him and confessed judgment against him was an attorney of this court. Assuming that this was required by the warrant of attorney, this defect would at most render the judgment voidable only, and judicial notice may be taken of the fact that the attorney in question is a member of the bar of this court. On this question see also Shure v. Goodimate Co., Inc., supra.

The remainder of the matters urged by the defendant with respect to the irregularity of the proceedings employed by the plaintiff are unquestionably valid. Defendant contends that the judgment is void because it was entered without the filing of an affidavit under the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A.Appendix, § 501 et seq., and without compliance with Rule XXIX of the Rules of the District Court for the Eastern District of Pennsylvania, which rule provides: "If a warrant of attorney to enter judgment be above ten years old, and under twenty, the court, or a judge thereof, must be moved for leave to enter judgment; which motion must be grounded on an affidavit of the due execution of the warrant, that the money is unpaid and the party living; but if the warrant be above twenty years old there must be a rule to show cause, and that must be served on the party, if he is to be found within the State."

With respect to the attachment, defendant points out that it was issued on the very day judgment was entered in direct violation of Rule 62 of the Federal Rules of Civil Procedure, which states in part: "Except as stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry."

Plaintiff's entry of judgment prior to the filing of an affidavit as required by the Soldiers and Sailors Civil Relief Act of 1940, its failure to comply with Rule XXIX of this court, its assessment of damages in the sum of $101,025.98, a sum demonstrated by the evidence to be vastly in excess of any balance claimed to be due, and the issuance of an immediate attachment in violation of Rule 62 of the Federal Rules of Civil Procedure can be neither justified nor condoned. Nor is it in any way mitigated by the concession at the outset of the brief that "Plaintiff here seeks to recover nothing beyond the unpaid balance of the original $80,000.00 loan, to wit, $28,500.00, plus interest and costs, and plus some items constituted by payment of taxes on the collateral real estate held by plaintiff's predecessors. To that end, the plaintiff is perfectly willing to reduce the assessment of damages accordingly." Nor does it avail plaintiff to argue that the evidence at the hearings on the present motion discloses that the defendants were not in military service, that there was a debt justly due and owing, and that the debtors are still alive. It cannot flatly disregard statutes of the United States and the rules of this court to enter judgment far in excess of the amount actually due and to issue an attachment thereon and then seek to have the court waive strict compliance therewith.

There remains, therefore, the question of how the further proceedings in this court may be most expeditiously handled. In this opinion I have considered defenses of the defendant to his substantive liability for the balance of the original debt, rather than merely the defects in the entry of the judgment, for the reason that if plaintiff should subsequently enter a judgment

in this matter regularly, defendant would again raise these substantive defenses in a new motion to vacate the judgment, and there is no reason why the time of the court hearing that motion should be taken up with the reception and consideration of the large volume of evidence adduced before me relating to these defenses.

The motion of the defendant Steinman to vacate the judgment against him is granted, with leave to the plaintiff to file a motion for entry of judgment under Rule XXIX, setting forth the amount it claims as the balance due, and to the defendant to file an answer thereto, the amount of damages then to be fixed by the court.

The motion of the defendant Lesse to vacate the judgment against him is granted.