# First and Farmers National Bank and Trust Company of Montrose v. Reynolds, Administratrix

*Garrett E. Gardner* and *James K. Peck*, for plaintiff.

*J. Melvin Kelley* and *Robert W. Grembath*, for defendant.

FARR, P. J., July 25, 1946.—This case involves the Deficiency Judgments Act of July 16, 1941, P. L. 400, 12 PS §2621.1.

On April 10, 1923, Ward W. Reynolds made a loan at the First National Bank of Montrose in the sum of $4,000. He gave a collateral note for that amount and on that date he executed and delivered a bond and mortgage in said amount to said bank, reciting in the mortgage that it was given as collateral security for

the payment of the note. It was listed on the note as collateral. On August 22, 1923, a life insurance policy for $5,000 was assigned to the bank as additional collateral security and listed on the note.

Later the bank was merged or the name changed so that the successor and holder of the note is the First and Farmers National Bank and Trust Company. The bank did not sell the bond and mortgage but entered judgment on the bond on December 27, 1932, and issued execution. The property described in the mortgage was sold by the sheriff to the bank; sale was confirmed and sheriff's deed delivered. The sale price was $314.57 and was all consumed in the payment of taxes and costs.

The sale was made subject to a first mortgage which the bank later paid. It claims there is due upon the note $3,307.93, with interest from August 26, 1932. The præcipe ordered the collection of the same debt that was then due upon the collateral note, viz, $3,510.66, the amount for which the note was renewed July 26, 1932.

No proceedings were had under the Deficiency Judgments Act of July 16, 1941, P. L. 400, 12 PS §2621.1, to fix the fair market value of the property sold.

On December 11, 1944, the petition of the administratrix of Ward W. Reynolds, deceased, prayed for a rule upon the bank to show cause why the court should not direct the prothonotary to mark the judgment entered upon said mortgage bond satisfied, and also why it should not be ordered to relinquish and quit claim to $5,000 said life insurance policy. On the same day such rule was granted.

The courts have never been confronted with this exact question. Although it does not appear in the record, it was stated by counsel on either side at the argument, that the bank held the property for a period, made repairs upon it, rented it and then sold it. It would therefore appear that the bank dealt with the

property as though it had purchased it for its own account, and this conduct on the part of the bank was acquiesced in by defendant in his lifetime from March 23, 1933, the time of the delivery of the deed to the bank, until his death in December 1944. If it had bought the property for the account of defendant and held it as substituted security in place of the bond and mortgage, neither enlarging nor diminishing in any respect pledgor's right in the subject-matter, it is probable that the property on this market could be sold to completely liquidate the indebtedness. See Gordon, Secretary of Banking, v. Mohawk Bond and Mortgage Co., 317 Pa. 257, 259. Had it taken the property for the account of Reynolds it might have been in a more favorable position, or had it sold the bond and mortgage to a third person or to itself, the case would then be ruled by Davis v. Kentwell Hall Corp. et al., 342 Pa. 1, and Olney Bank & Trust Co., 337 Pa. 357. Such procedure on the part of the bank would have detached it from its former character as a pledge or collateral, and from all interest which defendant may have previously had in its ownership, except only that there could be no more recovered upon it than the amount of the collateral note. Having failed to sell it and having proceeded upon the judgment entered upon the bond, and having purchased the property for its own account, it chose to treat it as the primary obligation.

Defendant relies upon the act of assembly which provides under these circumstances that defendant shall be discharged from liability to pay the debt, and upon Sophia Wilkes B. & L. Assn. v. Rudolff, 348 Pa. 477, 483:

". . . Immediately upon the passage of that Act, it became the duty of the plaintiff to credit on its judgment the fair market value of the property bought by it at the sheriff's sale in 1928, and the plaintiff cannot, by delaying the performance of that duty, to

the detriment of the defendant, reap an advantage for himself which a prompt performance of it would have avoided. It was the receipt of a property worth the amount of the judgment which discharged it. The Deficiency Judgments Act merely compelled effect to be given to that fact. We do not know, nor do we think it important, whether the property was actually worth the full amount of the judgment. It may be assumed that it was, for, if it was not, the plaintiff would have moved, before the expiration of the period of limitation prescribed by the Act, to have a lesser value fixed for the property. However that may be, the Act itself has now created a conclusive presumption that the property was worth at least one hundred percent of the judgment . . .".

In this case there can be no doubt but that plaintiff, refusing to surrender the insurance policy and proposing to cash it, is endeavoring to collect the balance due on said judgment. It is likewise true that if plaintiff received 100 percent on its judgment there is nothing due upon the collateral note. And if there is nothing due upon the collateral note it is the duty of plaintiff to reassign said insurance policy to defendant's administratrix.

In all of the cases which we have been able to find the courts have endeavored to give the act a liberal construction to accomplish its apparent purposes. See Pennsylvania Company v. Scott, 346 Pa. 13. The facts are that the act visits no hardship upon the creditor who obeys the mandate of the law. Whether the bank will lose because of its failure to obey the law is not made clear. The pleadings indicate that the collateral note in question represents the sum of 17 different notes. The testimony of Baker is that the bank proposes to collect from this collateral other notes which have been proved in bankruptcy, in spite of the fact that the bank may already have recovered all of the obligations of debtor in the sale of his real estate.

The converse of this situation has been before the circuit court and is reported in Auerbach v. Corn Exchange Nat. Bank & Trust Co., 148 F. (2d) 709. Judge Goodrich wrote the opinion. In that case the bond and mortgage were the primary obligations and life insurance policies were put up as collateral. The court held that the foreclosure of the bond and mortgage by the bank and failure of the bank to proceed under the Deficiency Judgments Act amounted to payment and release of the debt. And that the bank had no right to further hold or dispose of the insurance policies. The court said (712) :

". . . This argument does not convince us, although its ingenuity is granted. We think the whole purpose of the statute was to make the outlined procedure on petition the requisite before other steps to enforce further collection of the claim after the sale of the real estate could be followed. What the creditor loses at the end of the six months' period is the right to take further steps for collection. . . .". ". . . The 'balance due' in the Pennsylvania statute is not restricted to a money judgment. It may, but does not necessarily refer to a deficiency judgment. Realization of the 'balance due' can come from the sale of collateral, and selling collateral is collecting the balance due, as we have already said. . . .". ". . . We think that Corn Exchange here was seeking to collect the balance due on its judgment when it subjected the collateral in its hands to sale. . . .".

Defendant seems to rely first, upon Federal Deposit Insurance Corp. v. Steinman et al., 53 F. Supp. 644, but this case does not apply. It is decided upon the authority of Davis v. Kentwell Hall Corporation et al., 342 Pa. 1, and other cases cited which have no relation to the case before us for the reason in that case the bond and mortgage were sold either to a plaintiff or third person. Plaintiff also contends that the fact that there was a first mortgage against the property which was

sold subject to the payment thereof, affects the situation here. We are unable to see how this can affect the case in view of the act of assembly. Had the plaintiff proceeded under the Deficiency Judgments Act he would have been credited with the taxes, costs and prior liens, but having refused to comply with the mandate of the law, can it be said that he is now placed in a better position than he would have been had he obeyed the mandate?

Counsel for plaintiff also raises numerous objections to the act itself, upon its constitutionality. We think this question has been settled in Pennsylvania Company for Insurances on Lives and Granting Annuities v. Scott, 346 Pa. 13, Fidelity-Philadelphia Trust Co. v. Allen et al., 343 Pa. 428, Commonwealth Trust Company v. Boher, etc., 53 Dauphin 307, Smith v. Kirkpatrick, 31 Del. Co. 525, St. John's Reformed Church v. Neth, et al., 48 D. & C. 326.

We conclude first, that defendant is not estopped. The act itself provides that debtor may not waive the provisions of the act. And therefore the courts cannot say that by inference defendant has waived. Auerbach v. Corn Exchange Bank, 148 F. (2d) 709. Debtor had a right to rely upon plaintiff to perform its duty up until January 16, 1942. Defendant died in December of 1944; the act is constitutional: as we are bound to hold, the debt to the extent of the amount of the judgment has been paid, and the prothonotary is therefore directed to mark the judgment satisfied, released and discharged. Nothing has been cited to us which convinces us that we have the authority to order the bank in this proceeding to deliver the insurance policy to the administratrix, but that may be done by an appropriate proceeding.

Therefore we make the rule absolute so far as the satisfaction, release and discharge of the judgment is concerned, and discharge the rule so far as it relates to the delivery of the collateral insurance policy.